**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SCOTT REIMER, Individually and On Behalf of All Others Similarly Situated, | ELECTRONICALLY FILED |
| Plaintiff | Civil Action No. 1:07-cv-10526-JFK |
| v. | |
| FEDERAL HOME LOAN MORTGAGE CORPORATION, RICHARD F. SYRON, PATRICIA L. COOK, ANTHONY PISZEL and EUGENE M. McQUADE, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF THE OHIO PUBLIC EMPLOYEES RETIREMENT SYSTEM FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF COUNSEL**

## I.    INTRODUCTION

The above-captioned securities class action against Federal Home Loan Mortgage Corporation ("Freddie Mac" or the "Company") and certain of its senior executive officers for violations of the federal securities laws is brought on behalf of the purchasers of the publicly traded common stock of Freddie Mac during the Class Period,[1] who purchased the stock at artificially inflated prices and were damaged thereby (the "Class").

---

[1] August 1, 2006 through November 23, 2007, inclusive, is the longest Class Period alleged in a complaint against Freddie Mac and is the "Class Period" for purposes of this motion. *See Ohio Public Employees Retirement System v. Freddie Mac*, Civil Action No. 4:08-cv-00160 (N.D. Ohio) (the "Ohio Action"). The other complaint, which is for the above-captioned case (the "New York Action"), alleges a class period of August 1, 2006 through November 19, 2007. The longest period alleged is used for the purpose of the lead plaintiff motion. *See In re Party City Sec. Litig.*, 189 F.R.D. 91, 94 n.3 (D.N.J. 1999) ("The *Catanzarite* Action is relied upon for purposes of this motion because the class period alleged therein covers the longest class period alleged in the actions filed against the Defendants."); *see also In re Star Gas Sec. Litig.*, No. 04-CV-1766 (JBA), 2005 WL 818617 (D. Conn. Apr. 8, 2005) (using the longest class period alleged in determining the largest financial interest on lead plaintiff motion).

Ohio Public Employees Retirement System ("OPERS") respectfully moves the Court, pursuant to §21D of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") for entry of an order: (i) appointing OPERS as Lead Plaintiff in this action; and (ii) approving OPERS' selection of Waite, Schneider, Bayless & Chesley Co., L.P.A. ("Waite Schneider") and Chitwood Harley Harnes LLP ("Chitwood Harley") as Lead Counsel for the Class.

OPERS alleges in the Ohio Action that Defendants issued materially false and misleading financial reports and statements about Freddie Mac during the Class Period to mislead investors into believing that Freddie Mac was a sound investment. Defendants misrepresented and/or failed to disclose the following basic adverse facts known to them: (i) that Freddie Mac was purchasing a far greater amount of subprime mortgage loans or securities backed by subprime mortgage loans than was publicly disclosed; (ii) the Company was not implementing controls to ensure that home appraisals on subprime mortgage loans it was purchasing were done appropriately and to prevent collusion between lenders and appraisers, increasing the risk of defaults; (iii) the Company was not adequately reserving for uncollectible subprime mortgage loans it had purchased, causing its financial results to be misleading; and (iv) the Company's internal controls and risk management policies were not adequate to protect the Company and its investors. The false and misleading statements and omissions concealed Freddie Mac's exposure to massive losses in connection with its investments in subprime mortgages and artificially inflated the price of Freddie Mac's common stock.

In November 2007, Freddie Mac was finally forced to disclose the truth about its significant exposure to the subprime crisis when it announced that its subprime exposure had resulted in a record $2 billion loss. As a result of these revelations, the price of Freddie Mac

common stock plummeted by 29%, with common stock shareholders losing over $6.6 billion in market capitalization in one day.  On November 23, 2007, Freddie Mac announced the immediate sale of $6 billion in preferred stock because its losses from subprime mortgages had reduced its capital perilously close to the minimum capital that the Company is required by its regulator, the Office of Federal Housing Enterprise Oversight ("OFHEO"), to maintain.  The price of Freddie Mac common stock declined even further on this news.

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as Lead Plaintiff.  15 U.S.C. § 72u-4(a)(3)(B)(i).  The PSLRA provides a presumption that the person or group of persons with the largest financial interest in the relief sought, who otherwise meets the requirements of Fed. R. Civ. P. 23, is the most adequate lead plaintiff in federal securities class actions.  15 U.S.C. § 72u-4(a)(3)(B)(iii)(I).  Here, OPERS respectfully submits that it is the "most adequate plaintiff" because it is believed to have the largest financial interest in the relief sought by the Class and it meets the requirements of Rule 23 of the Federal Rules of Civil Procedure.[2]

Further, OPERS' claims are typical of the other members of the Class, and it will fairly and adequately represent the Class.  OPERS is precisely the type of institutional investor that Congress envisioned would serve as lead plaintiff in federal securities class actions after the passage of the PSLRA.  OPERS was founded in 1935 and provides retirement, disability, survivor and health care benefit programs for public employees throughout the State of Ohio who are not covered by another state or local retirement system.  OPERS serves more than 920,000 members and more than 3,700 public employers and has assets exceeding $77.6 billion, making it the 14th largest retirement system in the United States.

OPERS is also experienced as a lead plaintiff in federal securities fraud class actions and has gained particular experience in the operations of and accounting rules applicable to Freddie Mac. In 2004, OPERS was appointed as the lead plaintiff in a prior federal securities class action against Freddie Mac, ultimately achieving an extraordinary settlement of $410 million in cash for the class, representing 20% of the maximum recoverable damages.[3] OPERS serves as a lead plaintiff in the currently pending federal securities class action against the Federal National Mortgage Association ("Fannie Mae"), another government-sponsored entity created for purposes similar to Freddie Mac and Freddie Mac's larger rival.[4] OPERS also serves as a lead plaintiff in the *In re Marsh & McLennan Companies, Inc. Securities Litigation*, currently pending in the United States District Court for the Southern District of New York.

Thus, OPERS has the requisite experience, resources and motivation to adequately and vigorously represent the Class in this action. In addition, the Attorney General of Ohio, through his office, will actively oversee the prosecution of this action by counsel. Finally, OPERS has demonstrated its intent to vigorously prosecute the case against Defendants by filing a federal securities class action complaint against the Defendants.

Accordingly, OPERS respectfully requests that the Court grant its motion.

## II. FACTUAL BACKGROUND AND PENDING CLASS ACTIONS

Freddie Mac was chartered by the United States Congress to facilitate the flow of low-cost mortgage capital in order to increase the availability and affordability of home ownership to

---

[2] Copies of the PSLRA-required OPERS' Certification, the loss calculations, and the notice of pendency of the first-filed action are attached as Exhibits A, B and C, respectively, to the Declaration of James R. Cummins (the "Cummins Decl."), which is being filed simultaneously herewith.

[3] *See Ohio Public Employees Retirement System, et al. v. Freddie Mac, et al.,* Lead Case No. 03-cv-4261, U.S. District Court, Southern District of New York.

[4] *See In re Fannie Mae Securities Litigation,* Lead Case No. 04-cv-1639, U.S. District Court, District of Columbia.

low, moderate, and middle-income Americans. Freddie Mac is one of the nation's largest purchasers of mortgages and also runs a very large mortgage securitization business. Though chartered by Congress, Freddie Mac is a private, shareholder-owned corporation and its common stock is traded on the New York Stock Exchange ("NYSE").

Despite Freddie Mac's previous assurances to the contrary, the Company recently revealed that it has, in fact, been a significant participant in the devastated subprime housing finance industry. On November 20, 2007, Freddie Mac shocked investors and Wall Street by disclosing that it was forced to take a record $2 billion loss, or $3.29 per diluted share, in its third quarter to write down its subprime related assets. In addition, Freddie Mac also reported (i) a new provision for credit losses of $1.2 billion due to the significant deterioration of mortgage credit resulting from the continued weakness in the housing market, which was almost four times the second-quarter amount, (ii) a decrease in the fair value of net assets attributable to common stockholders, before capital transactions, of approximately $8.1 billion, and (iii) total GAAP mark-to-market losses of $3.6 billion, which included a $1.5 billion interest rate mark-to-market hit, compared with a gain of $1.1 billion in the previous quarter, and a credit-related mark-to-market loss of $2.3 billion, more than five times larger than the prior quarter. The loss is likely to be greater as further write-downs are taken by Freddie Mac on its subprime related investments. Freddie Mac also disclosed that it was in danger of falling below its required capital and, as a result, Freddie Mac shortly thereafter sliced its common stock dividend in half and diluted shareholder equity by selling $6.6 billion in preferred shares to bolster its capital.

On the day of the November 20, 2007 disclosure, Freddie Mac common stock tumbled 29%, its biggest decline since it started publicly trading in 1988, and lost over $6 billion in market capitalization in one day. On November 23, 2007, when Freddie announced it was necessary to sell

$6 billion in preferred stock, diluting the interests of common stockholders, the price of Freddie Mac stock declined further.  The market price of the stock remains at or around its lowest for at least the last 10 years.

Freddie  Mac has conceded that it was in fact at significant risk to subprime financing in at least four different ways – portfolio investments, mortgage guarantees, deficient accounting and internal control systems, and reliance on insurance protection from providers who were financially unable to meet their insurance commitments.

- Freddie Mac hid from the investing public that it had invested, for its own portfolio, billions of dollars in high risk, low quality mortgages that carried extraordinarily high credit risks.

- Freddie Mac failed to disclose that its internal controls and business methods were incapable of managing, identifying and guarding against massive losses in these investments and its guarantee exposure.

- Freddie Mac also hid the fact that it had guaranteed billions of dollars of the subprime, high risk mortgages sold to others — guarantees that Freddie Mac must now meet.

- Freddie Mac also failed to reveal to the public that its guarantee exposure was not protected or properly transferred to credit-worthy mortgage insurers.  Freddie Mac knew but failed to reveal that many of its third party mortgage insurers were not financially able to cover the risks they insured — the very risks Freddie Mac was seeking to transfer in order to reduce its mortgage investment holdings and guarantee exposure.

OPERS, based upon its experience in litigation against Freddie Mac, has determined that many of the Directors of Freddie Mac who serve on important Board committees are also liable personally for the damages caused by the fraud.   The identified responsible directors are as follows:

- All members of Freddie Mac's audit committee.   It was this committee that was responsible for assuring that internal controls were adequate, that Freddie Mac would become an SEC filer and comply with more stringent SEC accounting and disclosure rules, and that all financial risks were identified by management, officers and the Board.

- All members of the Finance and Capital Deployment Committee.  This committee was responsible for the Board's oversight of how Freddie Mac's capital was being used.  The

committee members were both reckless and willful in ignoring the subprime risks Freddie Mac was undertaking and failing to disclose.

- All members of the Governance, Nominating and Risk Oversight Committee. This committee knew or was so reckless in not knowing that Freddie Mac had substantial subprime risks, but continued to deny them. The members of this committee should have insisted that these economic and financial risks be identified, disclosed and quantified.

- Despite commitments to OFHEO in December 2003 to split the office of Chairman from the CEO, the Board has failed to do that. This unacceptable control in the hands of one person is willful recklessness on the part of the Board members who have allowed the situation to remain.

- Despite the serious failure of management to correct Freddie Mac's problems since 2003, the Board has recklessly ignored its duties by failing to align its CEO compensation with the interests of shareholders. For example, in 2006, the CEO was paid a total of at least $14.7 million in compensation even though performance targets and OFHEO commitments (unknown to the public) were not met.

- The Board put into place the appearance or "optics" of good governance knowing that the real financial peril of Freddie Mac was hidden and obscured by the Board's own acts. Only when Freddie Mac disclosed that it had huge exposure to subprime lending was the truth of the Company's governance failures made known.

- Failure of internal controls now harbors yet another restatement risk – a risk that the investing public did not and could not know.

Additionally, as disclosed in the demand letter and subpoena served on Freddie Mac in early November 2007 by the New York State Attorney General, the Defendants were not implementing controls to ensure that home appraisals were done appropriately and to prevent collusion between lenders and appraisers, increasing the risk of defaults.

As discussed above (at n.1), as of the date of the filing of this Motion, two complaints have been filed against Freddie Mac and certain of its executives – the Ohio Action and the New York Action. Like the Ohio Action filed by OPERS, the New York Action alleges a common course of conduct by the Defendants to artificially inflate the price of Freddie Mac common stock in violation of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated

thereunder, although the class period asserted in the New York Action ends on November 19, 2007.

### III.    OPERS IS THE MOST ADEQUATE PLAINTIFF

The PSLRA established a procedure for the selection of a lead plaintiff to oversee class actions brought under federal securities laws.  The plaintiff who files the first federal securities class action must publish a notice, within 20 days of the filing, advising members of the purported plaintiff class (i) of the pendency of the action, the claims asserted therein, and the purported Class Period; and (ii) that, not later than 60 days after the date of the notice, any member of the purported class may move the Court to serve as lead plaintiff of the class.  15 U.S.C. §78u-4(a)(3)(A)(i).  Scott Reimer, the plaintiff in the first-filed New York Action, caused the PSLRA notice to be published on November 21, 2007.[5]  Therefore, the deadline for filing motions for appointment as lead plaintiff in this action is January 22, 2008.  15 U.S.C. §§78u-4(a)(3)(A) and (B).

The PSLRA directs that not later than 90 days after the date on which a notice is published, or as soon as practicable after the Court decides any pending motion to consolidate any actions asserting substantially the same claim or claims, the Court shall consider any motions brought by purported class members for appointment as lead plaintiff.  15 U.S.C. §§78u-4(a)(3)(B)(i) and (iii). The PSLRA provides that the Court shall appoint as lead plaintiff "the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(i).  In determining the "most adequate plaintiff," the PSLRA provides:

> [T]he Court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that –

---

[5] *See* Cummins Decl., Paragraph 2, Exhibit C.

(aa)    has either filed the complaint or made a motion in response to the notice of the action;

(bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The presumption may be rebutted only upon proof by a member of the purported class that the presumptive lead plaintiff will not fairly or adequately represent the class or is subject to unique defenses.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *In re Cardinal Health, Inc., Sec. Litig.*, 226 F.R.D. 298, 302 (S.D. Ohio 2005); *In re Baan Co. Sec. Litig.*, 271 F.Supp.2d 3, 12 (D.C.C. March 28, 2002); *In re Telxon Corp. Sec. Litig.,* 67 F.Supp.2d 803, 816-17 (N.D. Ohio 1999).

OPERS meets the PSLRA criteria, is presumptively the most adequate lead plaintiff, and therefore it should be appointed as lead plaintiff in the action by the Court.

**1.    OPERS Timely Filed This Motion.**

As described above, the PSLRA deadline for filing motions for appointment as lead plaintiff in the action is January 22, 2008.  OPERS met the first PSLRA criteria because it timely filed this motion for appointment as lead plaintiff.

**2.    OPERS Has the Largest Financial Interest in the Relief Sought.**

"The PSLRA does not state how to determine which plaintiff has the largest financial interest in the relief sought by the class."  *Xianglin Shi v. Sina Corp.*, No. 05 Civ. 2154, 2005 WL 1561438, at *2 (S.D.N.Y. July 1, 2005) (Buchwald, J.); *see also Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 406-407 (S.D.N.Y. 2004) ("[I]n the absence of statutory guidance or  Second Circuit case law, the method

used and the factors considered in determining each movant's financial interest remain fully within the discretion of the district court.").

Lacking any direction from the PSLRA, courts generally look first to the losses each movant incurred from transactions in the subject security to identify the presumptive Lead Plaintiff:

> [T]he district court must consider the losses allegedly suffered by the various plaintiffs before selecting as the presumptively most adequate plaintiff – and hence the presumptive lead plaintiff – the one who has the largest financial interest in the relief sought by the class and otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  The court should compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit.

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, No. MDL 1500, 2003 WL 102806, at *2 (S.D.N.Y. Jan. 10, 2003) (Kram, J.), quoting *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002) (internal citations and quotations omitted).

OPERS also believes it has the largest financial interest in the relief sought by the Class based on the loss it incurred as a result of its trading in Freddie Mac during the Class Period. During the Class Period in this case, OPERS suffered a loss of $27.7 million on a first-in first-out ("FIFO") basis and a loss of $18.5 million on a last-in first-out ("LIFO") basis.[6]  During the shorter class period specified in the New York Action, OPERS suffered a loss of $26.1 million on a FIFO basis and a loss of $17.3 million on a LIFO basis.

While the substantial losses suffered by OPERS are highly significant, as an institutional investor, OPERS is also precisely the type of lead plaintiff Congress envisioned when it enacted

---

[6] The average closing stock price changes each day, affecting the PSLRA damages. Under the FIFO method, sales are offset against the movant's inventory of stock acquisitions, starting with the earliest and moving chronologically forward.  Under the alternative LIFO method, the sales are offset against the movant's inventory of stock acquisitions, starting with the latest and moving chronologically backward.  Two OPERS book entries for 96,407 shares and 120,400 shares, respectively, are not included in the loss calculations because they were not open market transactions or trades.

the PSLRA, as described above.  Both courts and the SEC alike have echoed this sentiment repeatedly.  *See In re Cardinal Health, Inc., Sec. Litig.*, 226 F.R.D. at 305-306 (recognizing that the public institutional investors "comport[] with the PSLRA's expressed preference for such lead plaintiffs"); *In re Baan Co. Sec. Litig.,* 186 F.R.D. 214, 221 (D.D.C. 1999) (it is believed that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."); *Bowman v. Legato Sys.*, 195 F.R.D. 655, 657 (N.D. Cal. 2000) (public pension funds are "exactly the type of lead plaintiff envisioned by Congress when it instituted the [PSLRA] lead plaintiff requirements . . ."); *Sakhrani v. Brightpoint, Inc.,* 78 F. Supp. 2d 845, 850 (S.D. Ind. 1999) ("The PSLRA was enacted with the explicit hope that institutional investors, who tend to have by far the largest financial stakes in securities litigation, would step forward to represent the class and exercise effective management and supervision of class lawyers."); *Martin v. Atchison Casting Corp.*, 200 F.R.D. 453, 456 (D. Kan. 2001) ("Legislative history indicates that Congress believed that large institutional investors would be in a better position to control the litigation.").

### 3.    OPERS Meets the Requirements of Fed. R. Civ. P. 23.

OPERS also meets the requirements of Rule 23.  Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

At the lead plaintiff stage, a movant needs to make a *prima facie* showing only as to two of the four requirements: typicality and adequacy.  See, e.g. *In re Cardinal Health, Inc., Sec.*

*Litig.*, 226 F.R.D. at 304; *Kaplan v. Gelfond,* 240 F.R.D. 88, 94 (S.D.N.Y. 2007); *Weinberg v. Atlas Air Worldwide Holdings, Inc.,* 216 F.R.D. 248, 252 (S.D.N.Y. 2003). Consequently, in deciding a lead plaintiff motion, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23, and defer its examination of the remaining requirements until the lead plaintiff moves for class certification. *Gluck v. CellStar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997); *Lax v. First Merchants Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866 *20 (N.D. Ill. August 6, 1997) ("[a] wide-ranging analysis under Rule 23 is not appropriate and should be left for consideration of a motion for class certification. This inquiry, therefore, focuses on the qualities of the class representatives enumerated in 23(a)(3) and 23(a)(4), that is, typicality and adequacy.").

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied when the prospective lead plaintiff's claims arise out of the same course of conduct or series of events and are based on the same legal theory as the other members of the class. *Kaplan* 240 F.R.D. at 94; *In re American Medical Sys.,* 75 F.3d 1069, 1082 (6th Cir. 1996) ("a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory."); *In re Drexel Burnham Lambert Group,* 960 F.2d 285, 291 (2d Cir. 1992), *cert. dismissed sub nom.,* 506 U.S. 1088 (1993); *Rossini v Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986).

OPERS' claims are the same as the claims of the other members of the Class. Just like all other Class members, (i) OPERS purchased Freddie Mac common stock at artificially inflated prices during the Class Period and suffered damages thereby, (ii) in such purchases, OPERS relied upon the integrity of the market, (iii) OPERS' claims arise from the same alleged misrepresentations and omissions by defendants, and (iv) OPERS has the same legal claims, *i.e.*

that Defendants violated Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder. The legal issues common to the members of the Class, which predominate over any questions that may affect individual class members, include the following:

1.    Whether Defendants omitted or misrepresented material facts;

2.    Whether Defendants' acts violated federal securities laws;

3.    Whether Defendants knew, had reason to know or recklessly disregarded that their statements were false and misleading;

4.    Whether the market prices of Freddie Mac common stock during the Class Period were artificially inflated due to material misrepresentations and omissions and the failure to correct the material misrepresentations alleged in the complaints; and

5.    The extent of damage sustained by Class members and the appropriate measure of damages.

Thus, the typicality requirement is satisfied in this case.

OPERS will also fairly and adequately represent the Class. Under Rule 23(a), courts have consistently applied a two-prong test to assess the adequacy of representation: (1) whether the named plaintiff has interests antagonistic to those of the class; and (2) whether the plaintiff's counsel is qualified to conduct the litigation. *See In re Baan Company Securities Litigation*, 2002 WL 32307825, *5 (D.D.C. July 19, 2002); *Lewis v. Curtis*, 671 F.2d 779, 788 (3d Cir. 1982).

OPERS satisfies this test. First, OPERS has no interests antagonistic to those of the Class. As detailed above, the OPERS' claims are the same as the claims of other Class members. OPERS suffered damages in the same way as the other Class members as a result of buying Freddie Mac common stock at artificially inflated prices during the Class Period.

Second, OPERS has selected highly qualified counsel who have significant experience in federal securities class actions and complex litigation.  Waite Schneider and Chitwood Harley have extensive experience in complex securities litigation.  *See* Cummins Decl. Exs. D and E. Also, having already served as lead counsel in a prior securities class action against Freddie Mac and currently serving as lead counsel in the securities class action against Fannie Mae, Waite Schneider has the advantage of substantial familiarity with Freddie Mac's mortgage securities business, operations, portfolio and accounting policies and practices.  This will translate into an increase in efficiency in litigating this case by reducing the learning curve associated with understanding Freddie Mac's operations, portfolios and policies and practices.

The substantial losses suffered by OPERS provides it with ample incentive to maximize the recovery in this case and ensures it will vigorously pursue the action.  Marc Dann, the Attorney General of Ohio, represents OPERS in this action, along with Julie Becker, OPERS' General Counsel, each of whom have prior experience in securities class action litigation.  As demonstrated herein, OPERS has the sophistication and resources to effectively manage this litigation and prior experience and knowledge from already having served as lead plaintiff in several securities fraud class actions, including prior class action lawsuits against Defendant Freddie Mac and its sister entity Fannie Mae, providing it with special insight into dealing with government sponsored entities and fraud related to mortgage securities.  OPERS has submitted a Certification affirming that it is willing to serve as a representative party and understands its obligations associated with serving as lead plaintiff.[7]   OPERS, a sophisticated institutional investor, is an ideal lead plaintiff under the PSLRA, as discussed above.  *See In re Cardinal Health, Inc., Sec. Litig.*, 226 F.R.D. at 305-306; *In re Cendant Corp. Litigation*, 264 F.3d 201, 276; *In re Enron Corp. Securities Litigation*, 206 F.R.D. 427, 442 (S.D. Tex 2002).

## IV.    THE COURT SHOULD APPROVE OPERS' CHOICE OF COUNSEL

The PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the class, subject to Court approval.  15 U.S.C. 78u-4(a)(3)(B)(v); *In re Cardinal Health, Inc., Sec. Litig.*, 226 F.R.D. at 305; *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 158 (S.D.N.Y. 1997); *In re Cendant Corp. Litig.,* 264 F.3d 201, 276 (3d Cir. 2001); *In re Telxon Corp.,* 67 F. Supp. 2d 803, 824 (N.D. Ohio 1999).  Thus, the Court should not disturb a lead plaintiff's choice of counsel unless necessary to "protect the interests of the class."    15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *In re Cardinal Health, Inc., Sec. Litig.*, 226 F.R.D. at 305 (citing *In re Cavanaugh*, 306 F.3d 726, 733 (9th Cir. 2002) ("the district court must approve the lead plaintiff's choice of counsel, but Congress gave the lead plaintiff, and not the court, the power to select a lawyer for the class.")).

Here, OPERS and the Ohio Attorney General have selected Waite Schneider and Chitwood Harley to serve as Lead Counsel.  Waite Schneider and Chitwood Harley are highly experienced in the areas of securities litigation and class actions and other complex class action litigation. They have successfully prosecuted numerous securities fraud class actions and obtained excellent results on behalf of defrauded investors.[8]  Further, as indicated above, Waite Schneider previously served as Lead Counsel to the class in a prior federal securities fraud class action against Freddie Mac, in which it obtained an outstanding settlement of $410 million in cash for the class – a settlement enthusiastically approved by the Court because of its remarkable recovery of 20% of the maximum estimated damages suffered by the class.  Waite Schneider also serves as Lead Counsel to OPERS and the class in the federal securities fraud class action currently pending against Fannie Mae, Freddie Mac's larger sister entity.    Through its

---

[7] *See* Cummins Decl., Exhibit A.
[8] See Cummins Decl., Exhibits D and E.

15

representation in those two cases, Waite Schneider has gained substantial knowledge about how Freddie Mac operates and runs its investment portfolios that will result in discovery efficiencies in this action. Chitwood Harley also has experience that will prove invaluable here, having prosecuted many high profile fraud cases on behalf of domestic and foreign institutional investors and having litigating cases from complaint through trial against several large consumer banks.

Accordingly, OPERS respectfully requests that the Court approve its selection of counsel.

## V.      CONCLUSION

For the foregoing reasons, OPERS respectfully requests that the Court: (a) appoint OPERS as Lead Plaintiff in this action; and (b) approve OPERS' selection of Waite, Schneider, Bayless & Chesley Co., L.P.A. and Chitwood Harley Harnes LLP as Lead Counsel.

Dated: January 22, 2008

      New York, New York

Respectfully submitted,

ATTORNEY GENERAL FOR
THE STATE OF OHIO MARC DANN
Andrea L. Seidt, Deputy Chief Counsel
Beth A. Finnerty, Deputy Chief Counsel
30 E. Broad Street, 17th Floor
Columbus, Ohio  43215
Telephone:  (614) 728-5454
Facsimile:  (614) 995-0246
E-mail:  ASeidt@ag.state.oh.us
E-mail:  BFinnerty@ag.state.oh.us

/s/ Darren T. Kaplan
Darren T. Kaplan  (DK 8190)
John F. Harnes (JH 5398)
Gregory E. Keller (GK 4562)
Chitwood Harley Harnes LLP
11 Grace Avenue, Suite 306
Great Neck, New York 11021
Telephone:  (404) 873-3900
Facsimile:  (404) 876-4476
E-mail:  dkaplan@chitwoodlaw.com
E-mail:  jfharnes@chitwoodlaw.com
E-mail:  gkeller@chitwoodlaw.com
    -and-
Martin D. Chitwood
Chitwood Harley Harnes LLP
2300 Promenade II
1230 Peachtree Street, N.E.
Atlanta, Georgia 30309
Telephone: (404) 873-3900
Facsimile: (404) 876-4476
E-mail:  mchitwood@chitwoodlaw.com

*Special Counsel to the Attorney General of*
*the State of Ohio and Counsel for Plaintiff*

/s/ Stanley M. Chesley (consent)
Stanley M. Chesley
James R. Cummins
Melanie S. Corwin
Jean M. Geoppinger
Waite Schneider, Bayless & Chesley Co., L.P.A.
1513 Fourth & Vine Tower
One West Fourth Street
Cincinnati, Ohio 45202
Telephone: (513) 621-0267
Facsimile: (513) 381-2375
E-mail: stanchesley@wsbclaw.com
E-mail: jcummins@wsbclaw.com
E-mail: mcorwin@wsbclaw.com
E-mail: jeangeoppinger@wsbclaw.com

*Special Counsel to the Attorney General of*
*the State of Ohio and Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 22, 2008, I caused to be electronically filed the foregoing paper with the Clerk of the Court using the ECF System, which will electronically send notification of such filing to the registered participants.  Paper copies will be sent via first-class mail postage pre-paid to those indicated as non-registered participants on January 22, 2008.

/s/ Darren T. Kaplan
Darren T. Kaplan
Chitwood Harley Harnes LLP